UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Lance Mitchell, | ) | |
|               Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-1351 |
| | ) | |
| Iowa Interstate RR Ltd., | ) | |
|               Defendant | ) | |

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court is the Defendant's motion in limine (Doc. #63) asking the Court to bar diagnosis and causation testimony from two physician witnesses.

Defendant moves to bar diagnosis and medical causation testimony from Drs. Buvanendran and Pannozo. The bases of this motion are twofold: the grounds for their causation testimony is only temporal proximity and that is insufficient to show causation; and neither of them are neurologists so they are not qualified to diagnose CRPS. Should the Court deny this motion, Defendant asks for a Daubert hearing.

Federal Rule of Evidence 702 governs the admission of expert testimony. It states, in relevant part, that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact ... a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion...." It also requires that: (1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case. *Id.* Rule 702 requires the district court to perform a "gate keeping" function before admitting expert scientific

testimony in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed.2d 469 (1993). See, Gayton v. McCoy 593 F.3d 610, 616 (7th Cir. 2010); Happel v. Walmart St ores Inc., 602 F.3d 820 (7th Cir. 2010).

In determining reliability, Daubert set out a non-exhaustive list of factors that can be considered, including whether a scientific theory has been or can be tested; whether it has been subjected to peer review and publication; and whether the theory is generally accepted in scientific community. 509 U.S. at 593-94. The Court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion. Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000). The Seventh Circuit has emphasized that determinations of admissibility of expert testimony should not "supplant the adversarial process." Gayton, 593 F.3d at 616. Even "shaky" expert testimony may be admissible, assailable through cross examination. Id., citing Daubert, 509 U.S. at 596.

The *Daubert* analysis applies even to a non-retained expert such as a treating physician. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151 (1999)(*Daubert* applies even when the expert's opinion relies on experience based observation). See, e.g. Turner v. Iowa Fire Equipment Co., 229 F.3d 1202 (8th Cir. 2000)(applying Kumho, supra, to treating physician).

Defendant argues that Dr. Pannozo's and Dr. Buvanendran's diagnoses of CRPS were inexplicable given Plaintiff's lack of "objective signs" of CRPS. Defendant characterizes their diagnoses as based wholly on temporal proximity of the development of pain and the injury at issue. In addition, Defendant asserts that only a neurologist is qualified to diagnose CRPS and that neither of these physicians is a neurologist.

The easy question comes first, namely whether non-neurologist physicians are qualified to diagnose this condition because they are not neurologists. Defendant claims that they are only qualified

to treat pain, not to diagnose the conditions that cause it.

It is true that possession of a medical degree does not automatically qualify a physician to opine on all medical subjects. Gayton, 593 F.3d at 616. That said, however, courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats. See cases cited in Gayton, 593 F.3d at 617. The question is not whether an expert witness is qualified in general, but whether his "qualifications provide a foundation for [him] to answer a specific question." Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir.1994), cited in Gayton, 593 F.3d at 617.

I reject the contention that only a neurologist may diagnose CRPS. Defendant cites no authority whatsoever to support its contention that physicians who specialize in treating pain are not as a general rule qualified to diagnose the conditions that cause the pain. In fact, courts ordinarily do not impose a requirement that an expert be a specialist in a given field so long as the expert is of a certain profession, such as a doctor. Gayton, 693 F.3d at 617, citing Doe v. Cutter Biological Inc., 971 F.2d 375, 385 (9th Cir. 1992); Dickenson v. Cardiac & Thoracic Surgery of E.Tenn., 388 F.3d 976, 978-79 (6th Cir. 2004); United States v. Viglia, 549 F.2d 335, 336 (5th Cir. 1977). In Gayton, the Seventh Circuit rejected the contention that only a cardiologist (and not a general practitioner) was qualified to testify about a heart-related death of a patient. 593 F.3d at 617. Rather, the Court looked at the three opinions the doctor rendered and examined the doctor's education, skill and training to see if he was qualified to draw those conclusions.

In this case, the opinion that is in question is that Plaintiff suffers from CRPS. Dr. Pannozo is a Board Certified Anesthesiologist and Pain Management Specialist. He attended the University of Illinois Medical School, doing fellowships in anesthesiology and pain management at Rush Presbyterian-St. Luke's Medical Center in Chicago. Part of his fellowship in the Rush Pain Clinic involved treating about 30 patients with CRPS. For the last 10 years, he has practiced at the Trinity

Pain Clinic in Moline, Illinois, where he treats about 10 patients each year with CRPS.

Dr. Buvanendran is a Board Certified anesthesiologist. He has a pain management practice in addition to his teaching position at Rush University Hospital. He has lectured and researched on acute and chronic pain and is on the Board of the American Society of Regional Anesthesia and Pain Medicine. He treats approximately 10 CRPS patients each day.

I find that their education and their ongoing practices in the area of CRPS is more than adequate to allow them to make this diagnosis. There is not even a whiff of junk science here. Both doctors have impeccable qualifications, and both practice traditional medicine specializing in the very condition that is at issue in this case. Defendant cites not one single case in which a court has disqualified diagnosis testimony from a physician as highly qualified as these two doctors are and with a history of treating the very condition that is at issue.

There are two specific arguments made by Defendant that need direct discussion. First, Defendant asserts that their opinions about medical causation were based solely on temporal proximity. This assertion is a mis-characterization of the record. Clearly, temporal proximity was one of the factors they considered. After all, the disabling pain Plaintiff reported to them occurred, according to the Plaintiff, only after the injury in question; prior to that injury, Plaintiff had been working. The temporal proximity of the onset of pain - one of the primary symptoms of the condition - to a physical trauma to the affected area was nothing if not logical. If temporal proximity was the only factor that was considered, the outcome might be different. But it was not. Plaintiff exhibited some physical symptoms as well as the continuing pain and the results of ongoing treatment and testing, the combination of which led to the diagnoses rendered by these two physicians. While the physical manifestations of the condition were not as all-inclusive as Defendant would like them to be, that is once again a question of weight not admissibility. Similarly, the fact that other experts reached other conclusions is not a basis for exclusion.

Second, Defendant asserts that the physicians themselves have not published any peer reviewed articles on the diagnosis of CRPS. That is *not* the Daubert criteria. The *Daubert* criteria is whether there are any peer-reviewed articles about the methods and principles used by the expert. While this is a factor that is proper to consider, it is not the end all and the be all of the analysis. This factor would be more important were there issues of junk science or genuine questions about the expert's qualifications. Here there is neither.

There is nothing in the record to suggest anything unreliable about these physicians' use of patient history, symptom identification, and the results of medical tests and treatments to diagnose a condition such as CRPS. The issues raised by the Defendant in this motion are appropriate issues to explore on cross examination. They are legitimate concerns in the context of convincing a jury that less weight should be accorded to these doctors' opinions, compared to other experts' opinions. The arguments do not in any way, however, go to the admissibility of the testimony in question.

Defendant also asks that, if the Court denies its motion to disqualify these doctors, a *Daubert* hearing be conducted to question the qualifications of these two doctors and the reliability of their opinions. There are two problems with that request. First, the record created by the parties on this question is more than adequate to conduct a *Daubert* examination without a hearing. Second, Defendant has known since Plaintiff disclosed these medical witnesses months ago what their qualifications were and what their opinions were. To request a *Daubert* hearing one week before the final pretrial conference is hardly a timely request.

The motion in limine is denied, and the request for a hearing is denied.

ENTERED ON May 26, 2010

                                         s/ John A. Gorman

                                     JOHN A. GORMAN
                               UNITED STATES MAGISTRATE JUDGE