**E-FILED**
Friday, 28 May, 2010  09:45:05 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Lance Mitchell, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-1351 |
| | ) | |
| Iowa Interstate RR Ltd., | ) | |
| Defendant | ) | |

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court is the Defendant's motion in limine (Doc. #64) asking the Court to bar the testimony of Dr. Richard Flacco.

Defendant moves to preclude Plaintiff from offering any testimony from Dr. Flacco regarding the diagnosis or treatment of or the prognosis for CRPS, asserting that he is not qualified to do so.

The Federal Rules of Evidence govern the admissibility of opinion testimony, as follows:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Rule 702 requires the district court to perform a "gatekeeping" function before admitting expert scientific testimony in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S.

579, 589, 113 S.Ct. 2786, 125 L. Ed.2d 469 (1993). See, Gayton v. McCoy 593 F.3d 610, 616 (7th Cir. 2010); Happel v. Walmart St ores Inc., 602 F.3d 820 (7th Cir. 2010).

In determining reliability, Daubert set out a non-exhaustive list of factors that can be considered, including whether a scientific theory has been or can be tested; whether it has been subjected to peer review and publication; and whether the theory is generally accepted in scientific community. 509 U.S. at 593-94. The Court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion. Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000). The Advisory Committee's Notes to Rule 702 suggest other factors relating to reliability determinations, including whether opinions were developed expressly for purposes of testifying, whether other explanations have been accounted for, and whether the field of expertise claimed is known to reach reliable results for the type of opinion given. Fed.R.Evid. 702 Advisory Committee Notes (2000 Amendments).

The Seventh Circuit has emphasized that determinations of admissibility of expert testimony should not "supplant the adversarial process." Gayton, 593 F.3d at 616. Even "shaky" expert testimony may be admissible, assailable through cross examination. Id., citing Daubert, 509 U.S. at 596.

The *Daubert* analysis applies even to a non-retained expert such as a treating physician. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151 (1999)(*Daubert* applies even when the expert's opinion relies on experience based observation). See, e.g. Turner v. Iowa Fire Equipment Co., 229 F.3d 1202 (8th Cir. 2000)(applying Kumho, supra, to treating physician).

Dr. Flacco has been Plaintiff's primary treating physician for 30 years. He is a Board Certified Family Practitioner, in practice for 40 years. He has served as an Associate Professor of

Medicine at Presbyterian St. Luke's Hospital and as a Clinical Instruction in Family Practice at the University of Illinois College of Medicine in Peoria. He has been the Chief of the Department of Medicine and a member of the Executive Committee for both Cottage Hospital and St. Mary's Hospital in Galesburg, Illinois. In his practice, he has treated 20 to 50 patients for CRPS, and is familiar with the criteria for diagnosing CRPS.

During the course of Dr. Flacco's treatment of Plaintiff, he has observed him on numerous occasions, treated him for numerous maladies, injuries and conditions, and has referred him to specialists for more specialized care. Prior to the injury at issue in this case, Plaintiff had been treated for plantar fasciitis and left knee pain from a tear of the medial meniscus. At the time of his deposition, Dr. Flacco was treating Plaintiff for CRPS, restless leg syndrome, peripheral arterial disease, a major depressive disorder, and fatigue. He has not complained of either the plantar fasciitis or the left knee pain since the workplace injury that led to this litigation. In the years since the underlying injury occurred, Dr. Flacco has seen Plaintiff on a regular basis, usually about once a month.

Plaintiff disclosed Dr. Flacco to testify regarding "causation, permanency, prognosis, and future medical care," based on his "examination of the Plaintiff, his training, knowledge and experience."

Dr. Flacco testified that he is not a specialist in CRPS and that he relied on other physicians' diagnosis of CRPS rather than making the diagnosis himself. (Def's Response, Exh. B p.59-62). He also testified, however, that he was familiar with the symptoms of CRPS. Consistent with that testimony, Plaintiff did not disclose Dr. Flacco as a witness who would testify about the diagnosis of CRPS. Despite that, in Plaintiff's response to this motion, however, there are multiple references

to Dr. Flacco's "diagnosis" of CRPS.

In light of Dr. Flacco's own testimony, *Daubert* precludes him from testifying that he made the diagnosis of CRPS as to Plaintiff. Moreover, Plaintiff's failure to disclose Dr. Flacco as a witness who would testify about this diagnosis bars him from adding that opinion at this late stage of the case. Fed.R.Civ.P. 37. To the extent this motion seeks to disqualify Dr. Flacco from testifying that he diagnosed CRPS, it is therefore GRANTED.

This ruling, of course, does not bar Dr. Flacco from relying on the reports of other physicians who made that diagnosis, nor does it keep him from testifying that he treated Plaintiff for this condition based on that reliance. As noted by the Court in Holbrook v. Lykes Bros. Steam Co., 80 F.3d 777, 786 (3d Cir. 1996), it would be wholly unfair to allow an expert to use those reports in generating opinions but to bar the plaintiff's own physician from using the reports in formulating a treatment plan.

Defendant moves from Dr. Flacco's admission that he is neither the doctor who diagnosed CRPS nor a specialist in CRPS to the conclusion that Dr. Flacco has "no specialized expertise that will assist the jury in reaching conclusions regarding the causation, permanency, prognosis and future medical care related to Plaintiff's CRPS." Defendant provides absolutely no support for that proposition, simply assuming that because Dr. Flacco cannot (indeed, did not) diagnose CRPS and does not believe he is an expert in CRPS, he cannot testify in any way about that condition that would be reliable and helpful to the jury.

In Gayton v. McCoy 593 F.3d 610, 617 (7th Cir. 2010), a pathologist had concluded that decedent died from heart failure. One of defendant's experts, a board certified cardiologist, testified that he died of heart failure as a result of "sustained ventricular tachyarrhythmia in a setting of

chronic nonischemic cardiomyopathy." Plaintiff's expert was a general practitioner for over 30 years with an M.D. from the University of Illinois. He spent a significant amount of time consulting on medical care in prisons. He adopted those findings and opined that if decedent had been given her cardiac medications while in prison, she might still be alive, and that the combination of her vomiting and other medications could have caused electrolyte imbalances that could have led to her tachycardia and then her heart failure.

The district court excluded Plaintiff's expert testimony, On appeal, the Seventh Circuit rejected that proposition, finding that "a physician in general practice is competent to testify about problems that a medical specialist typically treats." Id. at 617 (citing cases). Instead, the Court defined the question as "not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" Id., quoting Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir.1994).

Applying that formula, the Court of Appeals looked at each of the opinions of Plaintiff's expert. The Court first found that the district court did not abuse its discretion in finding the general practitioner unqualified to opine that the decedent's cardiac medications had a reasonable probability of saving her life if taken in the days before her death He lacked specific knowledge of both cardiology and pharmacology, and he gave no basis for his opinion about the way these drugs function in either the short term or the long term or how they might have prevented her condition from reaching a critical stage.

The Court ruled, however, the second opinion should not have been excluded. The effects of vomiting on electrolyte levels in the body was not specialized knowledge held only by cardiologist but was "knowledge that any competent physician would typically possess.

Other than the "diagnosis" issue, Defendant has not identified specifically Dr. Flacco's opinions. Plaintiff states that, in his deposition, Dr. Flacco testified to a reasonable degree of medical certainty that the work incident "played a part in causing CRPS." In reaching that conclusion, he received an oral history of how the accident occurred. He reviewed an MRI showing a ligament injury. He identified symptoms (discoloration, differential temperature and skin changes, profuse sweating, severe pain, and difficulty walking) that he associated with CRPS. He compared Plaintiff's physical condition with his condition prior to the injury, noting that these symptoms were not present before the injury.

That opinion is reliable. This physician was well acquainted with Plaintiff, both before and after the accident. He knew what medical problems preexisted and which ones were new. There is nothing to suggest that Plaintiff's description to Dr. Flacco of when or how the accident occurred was inaccurate. Dr. Flacco's opinion that the condition was caused by the injury is sufficiently reliable to go to the jury.

Dr. Flacco has also concluded that Plaintiff is permanently disabled. This conclusion is based in part on his experience in treating other patients with this condition: it does not improve and sometimes gets worse. Dr. Flacco has treated, by his own estimate, 20 to 50 patients with CRPS over the 30 years he has been in practice. That averages about 1-2 per year. Dr. Flacco's conclusion was also based on his observation that the regional pain syndrome component of Plaintiff's condition had not improved in the 3 years that had passed since the injury.

The conclusion of permanency is somewhat shaky. Dr. Flacco did not cite any authority other than his own experience as a treating physician and his observation of this Plaintiff. Nonetheless, Dr. Flacco's experience with CRPS is not nominal, and his experience with this patient

is lengthy and broad ranging. The weaknesses in reliability of this conclusion are appropriately addressed on cross examination, but they do not rise to the level of totally excluding his testimony.

Dr. Flacco also opined on the prognosis for Plaintiff and his need for future medical care, stating that Plaintiff is likely to be a "chronic patient" who would "continue to need medical care." As was the case with his permanency opinion, Dr. Flacco based this opinion on the fact that the regional pain syndrome component of Plaintiff's condition had not improved in the 3 years that had passed since the injury. For the same reasons, Dr. Flacco may testify as to this opinion. It is well within the normal area of expertise for a general practitioner, and while it may be susceptible to vigorous cross examination, it need not be excluded.

As stated herein, the motion is GRANTED IN PART AND DENIED IN PART. So Ordered.

ENTERED ON May 28, 2010

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE